UNITED STATES

v.

**Phillip S. OXENDINE, Private First Class (E–2), U.S. Marine Corps.**

NMCM 99 00381.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 30 April 1998.

Decided 31 Aug. 2000.

LT M. Eric Eversole, JAGC, USNR, Appellate Defense Counsel.

LT Danette L. Walker, JAGC, USNR, Appellate Government Counsel.

Before DeCICCO, Chief Judge, OZMUN, and ANDERSON, Appellate Military Judges.

DeCICCO, Chief Judge:

A general court-martial composed of officer and enlisted members convicted Private First Class (PFC) Oxendine, contrary to his pleas, of making two false official statements, involuntary manslaughter, and disorderly conduct, in violation of Articles 107, 119, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 919, and 934. The court-martial sentenced him to confinement for 10 years, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence and suspended confinement in excess of 6 years for a period of 12 months from the date of the action.[1] The case is on appeal to this Court under Article 66, UCMJ, 10 U.S.C. § 866. After carefully considering the record of trial, the appellant's assignments of error, and the Government's response, we conclude that, except as noted below, the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. *See* Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

**Facts**

The facts are undisputed and tragic. On the night of 20–21 December 1997 at Camp Schwab, Okinawa, Japan, several Marines gathered in the third-floor barracks room of PFC Minnicks to celebrate the birthday of PFC Knox. Among those present were Corporal (Cpl) Tessier, Lance Corporal (LCpl) Epley and the appellant. All of the Marines, except for the appellant, had consumed large amounts of beer and vodka. The appellant had only two sips of a vodka drink and was not intoxicated.

At some point during the festivities, the subject of hanging people out of the barracks room window was brought up. The Marines thought this would not only provide them with a thrill and something to do, but it would, in their minds, also be a way they could show their comrades the ultimate trust they had in each other. Four of the Marines were lowered headfirst out of the third-floor window and were held by their ankles without incident. They used no safety devices. None of them believed that anyone would be dropped. As they were being edged out the window and lowered down the side of the building, each Marine would use his hands to steady himself. The fifth Marine to be lowered was LCpl Epley. LCpl Epley wore a cast on his right arm and was one of the heavier Marines in the group. He and the appellant were good friends. As he willingly leaned out of the window, LCpl Epley could not use both of his hands to edge himself down the side of the building because of his injured arm. Cpl Tessier and the appellant were holding his legs.

---

1. Appellate defense counsel has filed a copy of the action of the Naval Clemency and Parole Board in the appellant's case. The board mitigated the dishonorable discharge to a bad-conduct discharge.

According to the statement the appellant made to an investigator, LCpl Epley leaned out of the window with all of his weight, and his exit was different from the others because he "went right out" instead of crawling out as the others had done. Prosecution Exhibit 4 at 6. As soon as LCpl Epley went out of the window, the appellant could feel that he was losing his grip. Within seconds, both Cpl Tessier and the appellant lost their hold on LCpl Epley, who fell to the ground. Despite the best efforts of numerous medical personnel, LCpl Epley died within a few hours. The cause of death was blunt force trauma. His blood alcohol level was .21.

Immediately after LCpl Epley fell, the Marines in PFC Minnicks' room rushed to the area below the window. The appellant was crying. The battalion executive officer, Major Stokes, and the officer of the day, Staff Sergeant (SSgt) Hilton, both arrived at approximately 0045. In the confusion that followed, SSgt Hilton instructed the persons who were present in the room at the time of the fall to stand to the side. They were not suspected of any criminal offenses at the time. He told all of the others who had gathered at the scene to return to their rooms.

As LCpl Epley was being taken away in an ambulance, PFC Minnicks suggested to the other Marines that they all tell SSgt Hilton that LCpl Epley had been smoking by the open window and simply fell out. When SSgt Hilton asked the group what had happened, the group responded in bits and pieces, but collectively related to him that LCpl Epley was leaning against the window, and the next thing they noticed, he was gone. SSgt Hilton distinctly recalled the appellant was present in the group and was relating this version of the events, but SSgt Hilton could not remember the appellant's exact words. Major Stokes testified that he also asked the appellant what had happened, and the appellant told him that LCpl Epley was by the window smoking at one moment and was gone the next.

Eventually, Cpl Tessier told SSgt Hilton the truth. The following day, the appellant also told the truth to an investigator. The appellant stated that when he was speaking with Major Stokes, he was "afraid to say we had been holding [LCpl Epley] out the window and lied by saying what I said." Prosecution Exhibit 4 at 5.

## I. Factual Sufficiency for Involuntary Manslaughter

The appellant argues that the facts are not sufficient to sustain a conviction for involuntary manslaughter because LCpl Epley's contributory negligence superseded the appellant's negligence. We disagree.

▮ The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we ourselves are convinced of the accused's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987).

▮ The elements of involuntary manslaughter are:

(i) that a certain named or described person is dead;

(ii) that the death resulted from the act or omission of the accused;

(iii) that the killing was unlawful; and

(iv) that this act or omission of the accused constituted culpable negligence, or occurred while the accused was perpetrating or attempting to perpetrate an offense directly affecting the person other than burglary, sodomy, rape, robbery, or aggravated arson.

MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), Part IV, ¶ 44b(2). The appellant's position is that LCpl Epley's death was more a result of Epley's own negligence in hanging out of the window than from the appellant's participation in the event.

In their treatise on criminal law, Professors Perkins and Boyce discuss this subject:

It must not be assumed that negligence of the deceased or of another is to be entirely disregarded. Even though the defendant was criminally negligent in his conduct it is possible for negligence of the deceased or another to intervene between this conduct and the fatal result in such a manner as to constitute a superseding cause, completely eliminating the defendant from the field of

proximate causation. This is true only in situations in which the second act of negligence looms so large in comparison with the first, that the first is not to be regarded as a substantial factor in the final result.

Rollin Perkins and Ronald Boyce, *Criminal Law*, 787 (3d ed.1982). *See, United States v. Martinez*, 42 M.J. 327, 336–39 (1995)(Wiss, J., concurring)(stating that question of whether the negligence of another "loomed so large" so as to be a superseding cause is a question for the factfinder); *see also, United States v. Cooke*, 18 M.J. 152, 155 (C.M.A.1984)(holding that the passage quoted above met with the Court's understanding of proximate cause).

The military judge instructed the members on this principle. Record at 501. The members, as the factfinders, then found the appellant guilty of involuntary manslaughter. In applying our review authority under Article 66, UCMJ, we too find beyond a reasonable doubt that LCpl Epley's negligence did not "loom so large" so as to be a superseding cause of his death. LCpl Epley and the appellant were both participants in a reckless and culpably negligent act that ended tragically. We find that LCpl Epley's negligence in allowing himself to be held upside down out of a third story window by his ankles while drunk was not a superseding cause that would totally eliminate the appellant from the field of causation. He could not have done this without the appellant's participation. Moreover, Perkins and Boyce also state in their treatise:

If an act of the deceased was a contributory cause of his death the problem is usually, though not necessarily, one of contributory negligence. Such negligence on the part of the deceased may be considered by the judge, together with all the other facts, in fixing the sentence in a particular case, but it has no bearing upon either responsibility or imputability in the determination of guilt or innocence.

Perkins and Boyce at 785. Therefore, if LCpl Epley's negligence in participating in reckless conduct was not a superseding cause of his death, but was a lesser factor in the events and constituted contributory negligence, the appellant cannot invoke it as a defense to involuntary manslaughter.

In defining the concept of culpable negligence necessary to support a guilty finding of involuntary manslaughter, the MCM provides:

Culpable negligence is a degree of carelessness greater than simple negligence. It is a negligent act or omission accompanied by a culpable disregard for the foreseeable consequences to others of that act or omission. Thus, the basis of a charge of involuntary manslaughter may be a negligent act or omission which, when viewed in the light of human experience, might foreseeably result in the death of another, even though death would not necessarily be a natural and probable consequence of the act or omission.

MCM, Part IV, ¶ 44c(2)(a)(i). This definition precisely describes the conduct of the appellant in the case at bar. The act of hanging persons by their ankles outside of a third-story window with no safety devices constitutes a culpable disregard for the foreseeable consequences by any reasonable human experience. Even though the Marines in the case successfully lowered four persons without incident, and they did not think they would actually drop anyone, this did not render the final result for LCpl Epley unforeseeable. The test is whether they created a substantial and unjustified danger in the view of a reasonable person in such circumstances. *United States v. Cowan*, 39 M.J. 950, 955 (N.M.C.M.R.1994), *aff'd*, 42 M.J. 475 (1995). Contrary to the appellant's assertion, we find that any reasonable person in such circumstances would have realized such a danger in holding a drunk Marine by his ankles out of a third-story window with no safety device. We find that the appellant engaged in an act of culpable negligence, that his culpable negligence was not superseded by the negligence of anyone else, and that it was a proximate cause of LCpl Epley's tragic death. We therefore find the evidence factually sufficient on the charge of involuntary manslaughter.

## II. The Military Judge's Instructions

The appellant also alleges that the instructions of the military judge on proximate cause and contributory negligence were insufficient and unduly confused the members. On this question, the military judge instructed:

> You may find the accused guilty of involuntary manslaughter only if you are satisfied beyond a reasonable doubt that the act of the accused which caused the death amounted to culpable negligence. The act must not only amount to culpable negligence, but must also be a proximate cause of death. Proximate cause means that the death must have been the natural and probable result of the accused's culpably negligent act. The probable cause does not have to be the only cause, but it must be a contributory cause which plays an important part in bringing about the death. It is possible for the conduct of two or more persons to contribute each as a proximate cause to the death of another.
>
> If the accused's conduct was the proximate cause of the victim's death, the accused will not be relieved of criminal responsibility just because some other person's conduct was also a proximate cause of the death. If the death occurred only because of some unforeseeable, independent, intervening cause which did not involve the accused, then the accused may not be convicted of involuntary manslaughter. The burden is on the prosecution to prove beyond a reasonable doubt that there was no independent intervening cause and that the accused's culpable negligence was a proximate cause of the victim's death.
>
> Any questions so far, gentlemen? Negative response. Now, there is evidence in this case raising the issue of whether the deceased, Lance Corporal Epley, failed to use reasonable care and caution for his own safety. If the accused's culpable negligence was a proximate cause of the death, the accused is not relieved of criminal responsibility just because of the negligence of the deceased may also have contributed to his death. The conduct of the deceased is, however, ⊥mportant on the issue of whether the accused's culpable negligence,

if any, was a proximate cause of death. Accordingly, a certain act may be a proximate cause of death even if it is not the only cause as long as it is a direct or contributing cause and plays an important role in causing the death. An act is not a proximate cause of death if some other force independent of the accused's act intervened as a cause of death.

> Any questions so far, gentlemen? All right. Negative response.

Record at 500-01. The defense did not object to these instructions, in spite of repeated opportunities to do so. Record at 497, 515, 518, and 519.

■ These instructions, which substantially follow the guidance provided in the Military Judges' Benchbook, Dept. of the Army Pamphlet 27-9, ¶ 3-44-2d (30 Jan. 1998), were sufficient and did not confuse the members. They correctly stated the law regarding proximate cause and contributory negligence and provided lucid guideposts for the members to follow. The military judge repeatedly asked the members whether they had any questions, and they responded that they understood the instructions and had no questions. Furthermore, the lack of defense objection at trial before the members close to deliberate forfeits the issue in the absence of plain error. RULE FOR COURTS-MARTIAL 920(f), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). We find no plain error regarding these instructions, and therefore no merit in this case.

## III. Factual and Legal Sufficiency Regarding the False Official Statements

The appellant next contends that the evidence failed to prove that he made a false official statement to SSgt Hilton and that the statement he made to Major Stokes was not false because LCpl Epley was actually by the window and was later gone. We again disagree with his contentions.

■ Under *Turner*, the test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable

doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Turner*, 25 M.J. at 324–25. We have cited the test for factual sufficiency in the previous discussion.

The elements of making a false official statement under Article 107, UCMJ, are:

(1) that the accused signed a certain official document or made a certain official statement;

(2) that the document or statement was false in certain particulars;

(3) that the accused knew it to be false at the time of signing it or making it; and

(4) that the false document or statement was made with the intent to deceive.

MCM, Part IV, ¶ 31b.

[5] Regarding the false official statement to SSgt Hilton, the evidence indicated that the appellant was one of several Marines who had been segregated due to their possible knowledge of what had caused LCpl Epley's fall. SSgt Hilton was in uniform and was engaged in his official duty when he inquired of the group what had happened. At this time, PFC Minnicks had already suggested to the group that they tell SSgt Hilton that LCpl Epley had been smoking by the open window and simply fell out. The Marines collectively related this version of the events to SSgt Hilton, and SSgt Hilton specifically remembered the appellant participating in relating this rendition, even though he could not recall the appellant's exact words. This version of the events was false because LCpl Epley did not just fall out of the window. He actually had placed his torso on the window sill with his legs in the air so that Cpl Tessier and the appellant could hold his legs as he lurched out of the window. Moreover, in a more general sense, the statement related a false impression that LCpl Epley had fallen because of his negligence alone, and not as a result of having been dropped by his comrades. Based on all of the circumstances, including LCpl Epley's fall from the appellant's grasp, PFC Minnicks' suggestion that they all lie, the appellant's presence in the group, and SSgt Hilton's testimony that he distinctly recalled the appellant relating this false version of the events, we find the evidence legally and factually sufficient to establish that the appellant made a false official statement to SSgt Hilton as alleged.

■ As for the appellant's separate false statement to Major Stokes, the above circumstances, in addition to the appellant's admission in his confession that he had lied to Major Stokes, convince us legally and factually of his guilt of this offense. His confession was more than adequately corroborated, and it indicated a clear intent to deceive. We summarily reject the appellant's strained argument that his statement to Major Stokes was technically not a false statement, just an incomplete one. Appellant's Brief of 29 February 2000 at 9. We find no merit in this assignment of error.

## IV. Multiplicity and Unreasonable Multiplication of Charges

In addition to being charged with involuntary manslaughter in the death of LCpl Epley, the appellant was also charged with disorderly conduct in violation of Article 134, UCMJ, "by unlawfully participating in an inherently dangerous activity with other Marines, to wit: by holding *other Marines* by the feet and legs outside of a third deck barracks room window, which conduct was prejudicial to good order and discipline and of a nature to bring discredit upon the armed forces." Charge Sheet (emphasis added). At trial, the defense moved to dismiss the disorderly conduct charge as multiplicious with the charge of involuntary manslaughter. The military judge denied the motion, but he later instructed the members that they should consider the offenses of involuntary manslaughter and disorderly conduct as one for sentencing because they encompassed the same conduct. Record at 602.

The appellant now claims that the military judge erred in denying the motion to dismiss, and that there was plain error in not finding that the offenses constituted an unreasonable multiplication of charges. We conclude that the military judge was correct in denying the motion, that the charges in this case were not unreasonably multiplied, and that even if they were, such an error was harmless.

■ Where two offenses require proof of separate elements, the offenses are not

multiplicious. *United States v. Oatney*, 45 M.J. 185, 188–89 (1996); *United States v. Teters*, 37 M.J. 370, 376 (C.M.A.1993). The offenses of involuntary manslaughter and disorderly conduct each contain elements not included in the other. *Compare* MCM, Part IV, ¶ 44b(2) with ¶ 73b. In fact, none of the elements are the same in the two offenses. Therefore, they are not multiplicious.

Whether the offenses have been unreasonably multiplied is a separate issue because the concept of unreasonable multiplication of charges is distinct from the concept of multiplicity. *United States v. Quiroz*, 53 M.J. 600 (N.M.Ct.Crim.App.2000)(en banc), *certificate for review filed*, 53 M.J. 256 (C.A.A.F.2000).

 In *Quiroz*, we listed factors we would consider in evaluating claims of unreasonable multiplication of charges. *Quiroz*, 53 M.J. at 607. First, we note that the appellant did not object specifically at trial that the offenses were unreasonably multiplied. Second, the charges were aimed at different criminal acts. The offense of involuntary manslaughter involved the culpable negligence of the appellant in the death of LCpl Epley. The offense of disorderly conduct was directed at the appellant's participation in holding "other Marines" out of the window and thereby disturbing the peace and quiet of those Marines living in the barracks. Whether the words "other Marines" included LCpl Epley or not makes no difference. The disorderly conduct in holding others out of the window involved a greater span of time and more persons than the offense of involuntary manslaughter. Third, the number of charges did not misrepresent or exaggerate the appellant's criminality or unfairly increase his punitive exposure. As stated above, the military judge found the offenses to be one for sentencing. Finally, we find no evidence of prosecutorial abuse. We do not believe that the charges in this case have been "piled on" in such a way so as to require remedial action. The inclusion of the disorderly conduct charge did not *unreasonably* multiply the charges in this case.

Also, in view of the military judge's instruction to the court members to consider the offenses of involuntary manslaughter and disorderly conduct as one for sentencing, we find that any error, even if one did exist, to have been harmless as to the appellant's sentence. Art. 59(a), UCMJ.[2]

**V.  Sentence Appropriateness**

 In the final assignment of error, the appellant argues that a sentence that includes six years of unsuspended confinement is inappropriately severe considering the appellant's character, remorse, and the nature of his crimes. We cannot condone the appellant's reckless and culpably negligent conduct or his false official statements after the incident. However, based on all of the circumstances of this case, we find that the confinement portion of his sentence is inappropriately severe. Art. 66(c), UCMJ; *United States v. Healy*, 26 M.J. 394 (C.M.A.1988). We will reduce the period of confinement in our decretal paragraph below.

**VI.  Disposition**

Accordingly, the findings are affirmed. Based on careful consideration of the entire record of trial, we affirm only so much of the sentence as includes a dishonorable discharge,[3] confinement for 4 years, forfeiture of all pay and allowances, and reduction to pay grade E–1.

Judge OZMUN and Judge ANDERSON concur.

---

2.  We again wish to emphasize to counsel and the trial judiciary that "multiplicity for sentencing" should no longer be used. *Quiroz*, 53 M.J. at 605, n. 16.

3.  We are aware of the action of the Naval Clemency and Parole Board in mitigating the dishonorable discharge to a bad-conduct discharge. That action is a separate clemency matter unrelated to our sentence appropriateness determination under Article 66, UCMJ. *Healy*, 26 M.J. at 395. Based on that action, the appellant will not receive a dishonorable discharge even though we have found it appropriate.