UNITED STATES, Appellee

v.

Phillip S. OXENDINE, Private First Class
U.S. Marine Corps, Appellant

No. 01-0050

Crim. App. No. 99 0381

United States Court of Appeals for the Armed Forces

Argued April 25, 2001

Decided August 23, 2001

BAKER, J., delivered the opinion of the Court, in
which CRAWFORD, C.J., and GIERKE and EFFRON, JJ., joined.
SULLIVAN, J., filed an opinion concurring in part and in
the result.


Counsel


For Appellant:  Lieutenant M. Eric Eversole, JAGC, USNR
(argued).


For Appellee:  Captain Danny R. Fields, USMC (argued);
Colonel Marc W. Fisher, Jr., USMC and Lieutenant Commander
Philip L. Sundel, JAGC, USN (on brief); Lieutenant Danette
L. Walker, JAGC, USNR.



Military Judge:  A. W. Keller, Jr.



**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE PUBLICATION.**

Judge BAKER delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of making a false official statement (2 specifications), involuntary manslaughter by culpable negligence, and disorderly conduct, in violation of Articles 107, 119, and 134, Uniform Code of Military Justice, 10 USC §§ 907, 919, and 934, respectively. The panel sentenced him to a dishonorable discharge, confinement for 10 years, total forfeitures, and reduction to pay grade E-1. The convening authority approved the sentence but suspended all confinement in excess of 6 years. The Court of Criminal Appeals affirmed only so much of the sentence as included a dishonorable discharge (reduced by the Naval Clemency and Parole Board to a bad-conduct discharge), confinement for 4 years, total forfeitures, and reduction to pay grade E-1. 54 MJ 508, 514 and n. 3 (2000). We granted review on the following issue:

> I
> WHETHER THE EVIDENCE FOR INVOLUNTARY
> MANSLAUGHTER WAS LEGALLY INSUFFICIENT WHEN
> APPELLANT DID NOT ACT WITH CULPABLE
> NEGLIGENCE AND THE VICTIM'S NEGLIGENCE WAS A
> SUPERCEDING CAUSE.

We resolve this issue against appellant.

## Background

The court below summarized the facts as follows:

The facts are undisputed and tragic. On the night of 20-21 December 1997 at Camp Schwab, Okinawa, Japan, several Marines gathered in the third-floor barracks room of PFC Minnicks to celebrate the birthday of PFC Knox. Among those present were Corporal (Cpl) Tessier, Lance Corporal (LCpl) Epley and the appellant. All of the Marines, except for the appellant, had consumed large amounts of beer and vodka. The appellant had only two sips of a vodka drink and was not intoxicated.

At some point during the festivities, the subject of hanging people out of the barracks room window was brought up. The Marines thought this would not only provide them with a thrill and something to do, but it would, in their minds, also be a way they could show their comrades the ultimate trust they had in each other. Four of the Marines were lowered headfirst out of the third-floor window and were held by their ankles without incident. They used no safety devices. None of them believed that anyone would be dropped. As they were being edged out the window and lowered down the side of the building, each Marine would use his hands to steady himself. The fifth Marine to be lowered was LCpl Epley. LCpl Epley wore a cast on his right arm and was one of the heavier Marines in the group. He and the appellant were good friends. As he willingly leaned out of the window, LCpl Epley could not use both of his hands to edge himself down the side of the building because of his injured arm. Cpl Tessier and the appellant were holding his legs.

According to the statement the appellant made to an investigator, LCpl Epley leaned out of the window with all of his weight, and his exit was different from the others because he "went right out" instead of crawling out as the others had done. Prosecution Exhibit 4 at 6. As soon as LCpl Epley went out of the window, the appellant could feel that he was losing his grip. Within seconds, both Cpl Tessier and the appellant lost their hold on LCpl Epley, who fell to the ground. Despite the best efforts of numerous medical personnel, LCpl Epley died within a few hours.

> The cause of death was blunt force trauma.  His blood
> alcohol level was .21.

54 MJ at 509-10.

## Discussion

Before this Court, appellant contends that the evidence is insufficient to sustain his conviction for involuntary manslaughter because LCpl Epley's negligent manner in exiting the window was "a superceding cause of his death" that relieved appellant of criminal responsibility.  Alternatively, he argues that Epley's death was not reasonably foreseeable from the standpoint of "a reasonable eighteen to twenty-year-old" Marine.  Final Brief at 3.

Our standard for reviewing legal sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)(emphasis in original); <u>United States v. Turner</u>, 25 MJ 324 (CMA 1987).  In resolving such questions, we are "bound to draw every reasonable inference from the evidence of record in favor of the prosecution." <u>United States v. Rogers</u>, 54 MJ 244, 246 (2000) (quoting  <u>United States v. Blocker</u>, 32 MJ 281, 284 (CMA 1991)).

4

The elements of involuntary manslaughter are:

(i) "That a certain named or described person is dead;"

(ii) "That the death resulted from the act or omission of the accused;"

(iii) "That the killing was unlawful; and"

(iv) "That this act or omission of the accused constituted culpable negligence . . . ."

Para. 44b(2), Part IV, Manual for Courts-Martial, United States (1995 ed.).

Negligence is conduct that "involves the creation of substantial and unjustifiable risk of which the person should be aware in view of all the circumstances." United States v. Brown, 22 MJ 448, 450 (CMA 1986)(emphasis in original). Culpable negligence is defined as "a negligent act or omission accompanied by a culpable disregard for the foreseeable consequences to others of that act or omission." This means that the "basis of a charge of involuntary manslaughter may be a negligent act or omission which, when viewed in the light of human experience, might foreseeably result in the death of another." Para. 44c(2)(a)(i), Part IV, Manual, supra. The test for foreseeability is "whether a reasonable person, in view of all the circumstances, would have realized the substantial and unjustifiable danger created by his acts." United States v. Henderson, 23 MJ 77, 80 (CMA 1986).

## Reasonable Foreseeability

Having decided to participate with the deceased and the other Marines in a dangerous joint enterprise, appellant was bound by the circumstances that would have put a reasonable person on notice as to the risk he was creating or helping to create, and the foreseeable consequences of that risk. It was not necessary that appellant himself "be aware of the substantial risk he is creating, but only that a reasonable person would have realized the risk." Brown, 22 MJ at 450.

In addition to the facts found by the Court of Criminal Appeals, the record contains additional evidence available to the members for their evaluation of the circumstances relating to the reasonable foreseeability of Epley's fall. The participants were aware of the cast on Epley's right arm that extended from his elbow down to his wrist and looped around his thumb. While appellant did not testify, his statements to investigators were admitted in evidence. In them he describes how when he entered the barracks room, he noticed Epley "drinking vodka and Kool-aid . . . from a large size Burger King cup." Private Minnicks, one of the participants, testified that, to him, it appeared Epley "was under the influence of alcohol." Appellant also described one Marine as "passed out on the floor in the head" when he got to the room. He also

remembered a comment by Minnicks that "he had already drank about one case of beer" at that point.

Appellant's statement also indicates that his motivation for participating in the "game" was to show that "you could trust that person with your life."  One could strongly infer from this statement that appellant realized the risk presented by the game included the real possibility of loss of life.

Another participant, PFC Grant, testified that while being lowered by his ankles, his loose-fitting trousers slipped down to about his thigh and he became nervous.  At this point, Grant asked to be pulled back into the room and the holders complied.  Appellant admitted to being one of those who held PFC Grant as he was lowered out of the window and described how his trousers had begun to slip off.  He also admitted to holding Minnicks and Tessier out of the window.  Notwithstanding the degree of alcohol use he encountered and the incident with Grant, appellant continued his participation as one of the holders until the game concluded with Epley's tragic fall.

Appellant relies on United States v. Adams, 49 MJ 182 (1998), for the proposition that the objective-reasonableness standard must be applied from the viewpoint of appellant and the 18 to 20-year-old enlisted Marines participating in this dangerous enterprise.  Adams had been convicted of having used provoking speech to a military policeman who was part of a group

which "had surrounded him and ordered him out of his car."  The lower court in exercising its unique factfinding powers found as a matter of factual sufficiency that Adams' statements "would not provoke a reasonable military policeman to violence because of his special police training."  We upheld the lower court's action as "a permissible exercise of its factfinding power." Id. at 184-85.

However, in doing so we made clear that from a legal-sufficiency standpoint, the status as a military policeman was but one of several circumstances to be considered in determining whether a reasonable person would have been provoked.  Id.  We did not hold or suggest that the objective standard of "a reasonable person" was being altered in any way.  Thus, Adams simply stands for the proposition that all the circumstances surrounding the particular event are to be considered in determining the issue of legal sufficiency of the evidence of how a reasonable person would view the language.  Id.

No authority offered by appellant stands for the proposition that the status or attributes of a particular person are to be imputed to "a reasonable person."  Adopting such a proposition would convert this long-standing common-law concept from an objective standard to a subjective one.  We decline to do so.  Thus, we are convinced that this record supports a finding by rational members that an objectively reasonable

8

person would have known the risk he was creating and the foreseeable consequences of that risk.

### The Deceased's Conduct as a Superseding Cause

Appellant contends that LCpl Epley was contributorily negligent in deciding to join the enterprise and that the manner in which he pushed himself away from the windowsill while Tessier and appellant were holding him was a superseding cause eliminating appellant from the field of proximate causation. Assuming arguendo that Epley's decision to participate amounted to negligence on his part, that alone would not suffice to create the proximate cause of his death required in the context of this particular joint enterprise to exonerate appellant.

The dangerous game of trust these participants engaged in is unlike drag-racing scenarios, for example, that result in convictions for homicide for the death of a co-participant. Some courts have held that a conviction for homicide cannot stand "when the sole basis" for attaching criminal liability for the death "is the defendant's participation in" the race. Velazquez v. State, 561 So.2d 347, 348 (Fla. App. 3 Dist. 1990)(emphasis added); Thacker v. State, 117 S.E.2d 913 (Ga.App. 1961)(dismissing indictment of surviving racer because it failed to allege any act of the defendant, save his own participation in the race, which caused the death); State v. Uhler, 402 N.E.2d 556 (Ohio Ct Com Pleas 1979)(ruling that "criminal liability"

9

will not be imposed "on the survivor of a drag race whose only contribution to the death of the other participant was his own participation in the race").  Contra Goldring v. State, 654 A.2d 939, 942-44 (Md. App. 1995).

As the record makes clear, unlike a decision to participate in a race, this joint enterprise required more than just each participant's decision to participate.  The objective of the game sought by the individual participants could not have been achieved but for the assistance of others in holding them outside the window.  Thus, Epley's decision to expose himself to the danger could not have resulted in his death had appellant not agreed to be his holder, at least as far as appellant's liability is concerned.

Even if one is found "criminally negligent. . . it is possible for negligence of the deceased . . . to intervene between" an accused's "conduct and the fatal result in such a manner as to constitute a superseding cause, completely eliminating the defendant from the field of proximate causation."  However, "[t]his is true only in situations in which the second act of negligence looms so large in comparison with the first, that the first is not to be regarded as a substantial factor in the final result."  United States v. Cooke, 18 MJ 152, 154 (CMA 1984)(quoting R. Perkins, Criminal Law 703 (2d ed. 1969)(emphasis omitted)).

10

The question, then, is whether the manner in which LCpl Epley hoisted himself away from the windowsill when compared to appellant's culpably negligent participation as one of his holders "loom[ed] so large" that appellant's actions could not "be regarded as a substantial factor in the fatal result."  See United States v. Lingenfelter, 30 MJ 302, 307 (CMA 1990).

As discussed earlier, the circumstances appellant encountered when he decided to participate foreshadowed a tragic outcome.  Young Marines under the influence of alcohol, the clumsy handling of Grant, the intoxicated state of Epley and the others, and Epley's cast were bugles warning appellant that something might go terribly wrong during this unjustifiably dangerous game.

## Conclusion

This case is the tragic result of a group of young men's decision to confirm their trust in each other as Marines through foolhardy and dangerous means.  While from the participants' perspective their actions may have been well intended, their lack of mature judgment resulted in the death of one of their brethren and appellant's best friend.  The military expects young Soldiers, Sailors, Airmen, and Marines to exercise good judgment in combat and no less in the barracks.

We hold that a rational trier of fact could have properly concluded that a reasonable person in this scenario would have

11

been on notice that he was participating in the creation of substantial risk of serious harm to the participants.  Likewise, on this record the trier of fact could reasonably have found that dropping Epley to his death, when viewed in the light of human experience, was a foreseeable result of the culpable disregard required by the statute.  Finally, we hold the evidence of record was sufficient to support a rational factfinder's conclusion that Epley's conduct was not a superseding cause and that appellant's conduct was a substantial factor in Epley's fall and thus, the proximate cause of his death.

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

United States v. Oxendine, 01-0050/MC

SULLIVAN, Judge (concurring in part and in the result):


This case can be resolved solely under military case law. See United States v. Martinez, 42 MJ 327, 330 (1995) (citing United States v. Brown, 22 MJ 448 (CMA 1986), and United States v. Gordon, 31 MJ 30 (CMA 1990)). As I have said before, "The Bible (Genesis 4:9) asks the question, 'Am I my brother's keeper?' . . . There are ***instances*** in military life where the high standards set for membership in the profession of arms require that Armed Forces members not only take care of themselves but also their fellow warriors." United States v. Martinez, supra at 330-31 n.5. (emphasis added).

This case is one of those instances.