# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38885**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Donald W. COX**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 22 February 2017

————————————

*Military Judge:* Matthew P. Stoffel (sitting alone).

*Approved sentence:* Confinement for one year and reduction to E-1. Sentence adjudged 25 June 2015 by GCM convened at Vandenberg Air Force Base, California.

*For Appellant:* Major Lauren A. Shure, USAF (argued) and Colonel Jeffrey G. Palomino, USAF.

*For Appellee:* Major G. Matt Osborn, USAF (argued); Colonel Katherine E. Oler, USAF; and Gerald R. Bruce, Esquire.

Before DREW, MAYBERRY, and J. BROWN, *Appellate Military Judges*.

Chief Judge DREW delivered the opinion of the Court, in which Senior Judge MAYBERRY and Senior Judge J. BROWN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

DREW, Chief Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, contrary to his plea, of one specification of involuntary manslaughter by culpable negligence, in violation of Article 119, Uniform Code of

Military Justice (UCMJ), 10 U.S.C. § 919.[1] The adjudged and approved sentence was confinement for one year and a reduction to E-1.

Appellant raises one assignment of error: whether his conviction for involuntary manslaughter is legally and factually sufficient.[2] We find that it is and thus affirm the findings and sentence.

## I. BACKGROUND

Appellant and another Airman drove their cars from the dorms on Vandenberg Air Force Base, California, in the direction of an off-base grocery store. Both had two passengers each. At the time, Appellant was 21 years old and had very little experience driving a standard transmission car, like the one he had recently purchased and was driving that day. After leaving the base, Appellant and the other Airman drove at excessive speeds on a divided four-lane road while passing other cars on the left and on the right. The cars entered a curvy, downhill stretch of road when Appellant lost control of his car. His car skidded diagonally across the road, hit a small curb, flew into and tumbled in the air, collided with a tree, and rolled over on the ground several times before finally coming to a rest in a cloud of dust and debris. The car sustained catastrophic damage. Appellant and his rear-seat passenger were injured but survived; his front-seat passenger died.

## II. DISCUSSION – LEGAL AND FACTUAL SUFFICIENCY

Appellant challenges the legal and factual sufficiency of the evidence. Specifically, he alleges that it does not prove that he acted with culpable negligence. As Appellant concedes that his driving that day constituted simple negligence, this case presents a question as to what is necessary to constitute the higher standard of culpable negligence.

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F.

---

[1] The military judge also convicted Appellant of one specification of reckless driving, in violation of Article 111, UCMJ, 10 U.S.C. § 911, but immediately dismissed this finding as an unreasonable multiplication of charges. The military judge acquitted Appellant of one specification of willfully engaging in a vehicle speed contest, in violation of Article 134, UCMJ, 10 U.S.C. § 934.

[2] We heard oral argument in this case on 12 January 2017 at The Ohio State University Moritz College of Law as part of this court's Project Outreach.

2002) (quoting *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001); *see also United States v. McGinty,* 38 M.J. 131, 132 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of [Appellant]'s guilt beyond a reasonable doubt." *Turner,* 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. Proof beyond reasonable doubt does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The elements of involuntary manslaughter by culpable negligence are:

> (1) a death,
>
> (2) the death resulted from Appellant's act or omission,
>
> (3) the killing was unlawful, and
>
> (4) Appellant's act or omission constituted culpable negligence.

*Manual for Courts-Martial, United States* (*MCM*) (2012 ed.), pt. IV ¶ 44.b.(2); *United States v. Oxendine*, 55 M.J. 323, 325 (C.A.A.F. 2001); *United States v. McDuffie*, 65 M.J. 631, 634 (A.F. Ct. Crim. App. 2007).

As an initial matter, Appellant argues that the Government, in attempting to prove his actions amounted to culpable negligence, is—based on how they elected to charge the offense—limited only to proof that Appellant "exceeded the speed limit." We disagree. In addition to exceeding the speed limit, the specification specifically alleged the act of causing his car to veer off the road and crash.

Moreover, the specification alleges—and the Government must prove—that these specified acts constituted culpable negligence. To prove the culpably negligent nature of Appellant's acts, the Government may, and often must, rely on the additional surrounding circumstances and the manner in which he committed them. It is not necessary that all of the details that together establish that an act or omission rose to the level of culpable negligence be specifically alleged in a specification. *See generally, United States v. Crafter*, 64 M.J. 209

(C.A.A.F. 2006) (addressing the test for the sufficiency of a specification). Instead, the fact-finder at trial and this court on appeal may consider all of the evidence admitted during findings when determining whether Appellant's actions constituted culpable negligence.

Appellant's primary argument on appeal is that his actions amounted to nothing more than simple negligence and did not rise to the level of culpable negligence necessary to sustain a conviction of involuntary manslaughter.

"Culpable negligence is a degree of carelessness greater than simple negligence." *MCM*, pt. IV ¶ 44.c.(2)(a)(i). "Simple negligence is the absence of due care, that is an act or omission of a person who is under a duty to use due care which exhibits a lack of that degree of care of the safety of others which a reasonably careful person would have exercised under the same or similar circumstances." *Id.* at ¶ 85.c.(2).

> [Culpable negligence] is a negligent act or omission accompanied by a culpable disregard for the foreseeable consequences to others of that act or omission. Thus, the basis of a charge of involuntary manslaughter may be a negligent act or omission which, when viewed in the light of human experience, might foreseeably result in the death of another, even though death would not necessarily be a natural and probable consequence of the act or omission.

*Id.* at ¶ 44.c.(2)(a)(i). "We apply an objective test in determining whether the consequences of an act are foreseeable." *McDuffie*, 65 M.J. at 635 (citing *United States v. Riley*, 58 M.J. 305, 311 (C.A.A.F. 2003); *Oxendine*, 55 M.J. at 326).

The *MCM* defines recklessness, in the context of operating a vehicle, in a similar fashion under Article 111, UCMJ, 10 U.S.C. § 911, as a "culpable disregard of foreseeable consequences to others from the act or omission involved." *MCM*, pt. IV, ¶ 35.c.(7). The *MCM* goes on to state that recklessness "cannot be established solely by reason of the happening of an injury . . . or . . . by proof alone of excessive speed or erratic operation" of a vehicle, but these facts may be relevant to the ultimate question of whether an appellant's actions were of a "heedless nature which made it actually or imminently dangerous to the occupants." *Id.*; *see also United States v. Bennitt,* 72 M.J. 266, 269 (C.A.A.F. 2013) (noting that the 1917 MCM stated that "the driving of an automobile in slight excess of the speed limit . . . is not the kind of unlawful act" sufficient to sustain a conviction for involuntary manslaughter); *United States v. Lawrence*, 18 C.M.R. 855, 857 (A.F.C.M.R. 1955) ("[E]xceeding the speed limit, . . . standing alone, may show nothing more than simple negligence, which will not suffice for a conviction for reckless driving. Nor may we conclude from the mere occurrence of the accident that it was precipitated by a culpably negligent or

wanton operation of the vehicle.") (citations omitted); *United States v. Gamble*, 40 C.M.R. 646, 648 (A.C.M.R. 1969) ("[S]imply exceeding the speed limit is not culpable negligence.").

Appellant, relying on the *MCM*'s guidance for reckless operation of a vehicle, argues that Appellant's speed alone cannot establish culpable negligence. Because the definitions of "recklessness" and "culpable negligence" employ the same operative language, the *MCM*'s discussion of recklessness is instructive to our analysis of culpable negligence, but we disagree that it leads to a conclusion that no amount of speed alone can ever establish culpable negligence. While exceeding the speed limit by a few miles per hour would not, by itself, establish culpable negligence, there are circumstances where sufficient excess speed alone could do so.

When reviewing for legal sufficiency, we view the evidence in the light most favorable to the Government. The posted speed limit was 65 miles per hour. The Government's expert testified that Appellant was driving over 100 miles per hour, perhaps up to 115 miles per hour, when he lost control of his car. One of Appellant's passengers died as a result of his operation of his car and it is foreseeable that his unlawful act in driving over 100 miles per hour on a curvy, downhill public road would result in a fatal crash.

When giving the evidence a fresh, impartial look, as we are required to do when assessing factual sufficiency, Appellant's exact speed at the time of the crash becomes less clear. The Defense successfully challenged the Government expert's conclusions and provided an alternative expert opinion. If the sole evidence before the military judge was the testimony of these expert witnesses, this case might be a closer call, but the evidence was much more than just a so-called "battle of the experts." The Government expert's opinion was corroborated by multiple lay witnesses, including the civilian occupants of two other cars on the road that day, by occupants of the fellow Airman's car, by the surviving passenger of Appellant's car, and even by Appellant's own admissions.

Appellant's friend, who was his rear-seat passenger at the time of the crash, testified that he had ridden with Appellant more times than he could count and this was the fastest Appellant had ever driven. He also testified that 10-30 seconds before the crash, Appellant was driving at what seemed to him as over 120 miles per hour. The two civilian drivers on the road put Appellant's speed when he passed them as well above 80 miles per hour. Appellant himself admitted that he was driving over 80 miles per hour. The evidence of his excessive speed alone might well have been sufficient to establish the foreseeability of a fatal crash, but the Government introduced additional evidence to prove the degree of Appellant's negligence.

The evidence established that Appellant was a relatively inexperienced driver, driving a modified manual transmission "muscle car," and that his driving behavior on the day in question involved high-speed passing, along with rapid acceleration and deceleration. Although the driving conditions were generally good, with dry well-maintained pavement and ample daylight, the crash occurred in a portion of the road with two curves and a significant downhill grade. This evidence of the manner in which Appellant was driving and of the other surrounding circumstances, taken together with his excessive speed, establishes that Appellant's actions constituted culpable negligence.

It is foreseeable that a crash will occur when an inexperienced driver engages in high-speed passing on both sides of other vehicles, on a stretch of road with curves and a notable downhill grade, all while driving at speeds at least in excess of 80 miles per hour. Moreover, death of an occupant is a foreseeable result of a crash at these speeds. After reviewing the testimony and photographs of the crash and resulting destruction, we are convinced that it is not only foreseeable, but a natural and probable result of such a high speed crash for all three occupants to be killed. Appellant's actions in driving the way he did culpably disregarded these foreseeable consequences and, thus, amounted to culpable negligence.

Appellant next argues that the pre-crash modifications to his vehicle, particularly the unexplained disconnection of the side airbags, were the actual cause of the death. He points to the testimony of the medical examiner that the deceased was partially ejected from the vehicle and died as a result of a compression fracture of his skull. Appellant argues that if the airbags had worked properly, Appellant might not have been partially ejected and would not have suffered the same type of injury to his skull.

The modifications to the vehicle did not make a fatal crash at Appellant's speed and manner of driving any less foreseeable. There is no evidence that the modifications to Appellant's vehicle would have caused a reasonable person to expect it to handle so safely at high speeds on such a road that it would be unforeseeable for an inexperienced driver to crash and cause the death of a passenger. Additionally, while it is possible that a fully functioning airbag system could have intervened to *save* the decedent's life, it was Appellant's acts or omissions—not the lack of a side airbag—that *caused* his death. Thus, none of the modifications to Appellant's vehicle made a fatal accident any less foreseeable nor do they make his disregard for these foreseeable results any less culpable. It was Appellant's driving behavior, not the modifications to his vehicle, that caused his passenger's death.

We are convinced that a reasonable factfinder could have found—as the military judge did—all the essential elements of involuntary manslaughter beyond a reasonable doubt. In addition, after weighing the evidence in the record

of trial and making allowances for not personally observing the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt.

## III. CONCLUSION

The approved findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a); 866(c). Accordingly, the approved findings and the sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court